TEXAS & PACIFIC RAILWAY COMPANY ET AL. v. T. J. COGGIN.

Decided November 18, 1905.

**1.—Evidence—Admissibility—Tending to Prove Issue.**

To render testimony admissible it is not necessary that it should be direct and positive; it is sufficient if it tends to prove an issue.

**2.—Bill of Exceptions—Qualification by Judge.**

In a qualification appended to a bill of exception to the exclusion of certain testimony, the trial judge gave other and different reasons from those urged on the trial by the opposing party. Only the objections urged on the trial can be considered.

**3.—Measure of Damage.**

A part of a shipment of cattle destined originally for sale upon the St. Louis market were, upon their arrival at St. Louis, shipped on to Chicago be-

cause there was no market for such cattle at St. Louis. The measure of damage for those cattle would be the difference in their market value at St. Louis in the condition and at the time they should have reached that market by the exercise of ordinary care upon the part of the carriers, and what they sold for in Chicago after deducting the necessary expense of getting them to that market.

Appeal from the District Court of Mitchell. Tried below before Hon. James L. Sheppard.

*J. M. Wagstaff,* for appellant Texas & Pacific Railway Company.— The court erred in refusing to permit the witness R. N. Hodges to testify that in January or February, 1904, he saw about 2½ miles south of Iatan, Texas, a bunch of cattle that were being driven north towards Iatan Station by Will R. Logan and that in said bunch of cattle there were some bulls and cows and three or four hundred head of calves and when he saw said bulls, cows and calves said cattle were in thin flesh and were poor and were not such cattle as were suitable to ship to market for beef and that he was engaged in the stock business and knew about what said calves would weigh at Iatan, Texas, and at the time he saw them they would have weighed about 250 pounds each.

The court erred in refusing defendant's special instruction, as follows: If you find from the evidence in this case that there was no market value for the calves in the condition they were in at the time of arrival at National Stock Yards, Illinois, you will find for defendant, as to any damages as to the calves. International & G. N. Ry. v. Kuehn, 31 S. W. Rep., 322; Gulf, C. & S. F. Ry. v. Johnson, 44 S. W. Rep., 1067; Gulf, C. & S. F. Ry. v. Cash, 28 S. W. Rep., 387.

There being no pleadings or evidence to sustain a judgment against appellant for the difference in the market value of the calves at East St. Louis, in the condition in which they were on arrival and in the condition in which they should have been on arrival, it was error for the court to authorize the jury to assess damages against appellant for all the cattle that were damaged on their arrival at East St. Louis.

*Whitaker & Gibbs,* for appellants Missouri, Kansas & Texas Railway Company and Missouri, Kansas & Texas Railway Company of Texas.— That the court erred in excluding the testimony of the witness N. R. Hodges. Armendaiz v. Stillman, 67 Texas, 462; Armendaiz v. Stillman, 3 S. W. Rep., 678; Rogers v. Crain, 30 Texas, 291; Abel v. Sparks, 6 Texas, 351; Todd v. Dysart, 23 Texas, 597; Taylor v. Ferguson, 87 Texas, 6; Taylor v. Ferguson, 26 S. W. Rep., 46.

The verdict of the jury and the judgment rendered thereon must be supported by both the allegations and the proof. Paul v. Perez, 7 Texas, 345; Middlebrook v. Zapp, 10 S. W. Rep., 734.

*F. G. Thurmond,* for appellee.—That the court did not err in excluding the testimony of the witness R. N. Hodges, cited, 21 S. W. Rep., 133.

SPEER, ASSOCIATE JUSTICE.—This is an appeal from a judgment in favor of appellee growing out of the shipment of 388 calves, 27 bulls and 26 cows from Iatan, Texas, to St. Louis, Missouri, and Chicago,

Illinois. There were allegations of delay, rough handling, depreciated price of cattle by reason of their bad appearance, and fall in the market.

Appellee Texas & Pacific Railway Company presents three assignments of error, each of which we sustain. The first assignment complains of the action of the court in refusing to permit the witness R. N. Hodges to testify that "in January or February, 1904, he saw about 2½ miles south of Iatan, Texas, a bunch of cattle that were being driven north towards Iatan station by Will R. Logan, and that in said bunch of cattle there were some bulls and some cows and three or four hundred head of calves, and that the witness saw said bulls, cows and calves, and that said cattle were in thin flesh and were poor and were not such cattle as were suitable to ship to market for beef." It is shown in the bill of exceptions taken to the exclusion of this testimony that if the defendants had been permitted they would have further shown by the witness that he was engaged in the stock business and that he knew about what said calves would weigh at Iatan, Texas, at the time he saw them, and that in the condition they were in they would have weighed 250 pounds each. The objection to this testimony, which the court sustained, was that the defendants had not identified this as the bunch of cattle that was shipped from Iatan in February, 1904, by T. J. Coggin, and that it was not shown by the evidence that the cattle the witness saw were the Coggin cattle.

Without detailing the evidence which leads us to this conclusion, we hold that there is testimony which, if it does not establish the identity of the bunch of cattle seen by the witness as that of appellee, tends to do so, and the testimony was therefore pertinent for the jury's consideration upon that issue and ought to have been admitted. It was not necessary, in order to render the testimony admissible, that the witness should have identified the cattle as those shipped by appellee, but it was sufficient if his evidence tended in that direction. To the bill complaining of this ruling the trial judge appended the qualification that defendants never offered to show that the witness was a stockman, nor that he knew what said calves would weigh at Iatan, Texas, and that as to the bulls and cows in the bunch the witness was uncertain. If we take this explanation as contradicting the recitations of the bill above set forth, it nevertheless does not relieve the ruling of error, since no such objection as that mentioned by the court was made by appellee, the only objection being as before stated that the witness had not identified the cattle as the Coggin cattle. Moreover, we hardly think it would require an expert to tell whether or not cattle which he had examined were poor and weak or fat and suitable for beef.

The second and third assignments of error present practically the same question. Appellee alleged with reference to the calves in the shipment that when they arrived at National Stock Yards, East St. Louis, they were not fit for market and could not be sold on said market for any price, and had to be shipped to Chicago, Illinois, and there sold on that market for their full market value in the condition in which they arrived there. He further alleged that all of his cattle were damaged eight dollars per head, and that said amount represented "the difference between the market value of the cattle at the time and in the condition in which they would have arrived and been sold on the said

market but for said negligence of defendants and the said delays as aforesaid in transporting said cattle to said market by said defendants as aforesaid, and their market value at the time and in the condition in which they did arrive and were sold upon said market at St. Louis National Stock Yards and Chicago Cattle Market, at which said market said calves were sold." The evidence supported the allegation that there was no market for the calves in St. Louis, and that they were in consequence shipped to Chicago and sold. In this state of the case the trial court submitted the difference in the market value of all the cattle in their damaged and undamaged condition at St. Louis as the measure of appellee's recovery. This was error. Clearly as to the calves the measure of damage would be the difference in their value on the market at East St. Louis in the condition and at the time they should have reached that market by the exercise of ordinary care upon the part of the carriers, and what they sold for in Chicago after deducting the necessary expense of getting them to that market. The assignments of the other appellants presenting these questions are also sustained and all other assignments overruled.

Reversed and remanded.

*Reversed and remanded.*