GULF, COLORADO & SANTA FE RAILWAY COMPANY v. I. LOONEY.

Decided June 17, 1908.

**1.—Cattle Shipment—Oral and Written Contract.**

Evidence considered and held to support a finding that cattle were shipped on an oral contract binding the carrier to deliver them in time for the market on a day named, and that this prevailed over the terms of a written shipping contract, signed by the owner afterwards, hastily, and without knowledge of its contents.

**2.—Same—Contract—Alternative Destination.**

A contract to carry to S. with right to terminate transportation at F. was the same in effect as one to transport to F. with right to continue on to S.

**3.—Damages.**

Where, by reason of the carrier's failure to deliver cattle at F. in time for market on a day named, it was made advisable for the shipper, in order to lessen the damages, to have them transported further to market at S., which he did, the measure of his damages was the difference between the price which would have been realized at F. on the day promised and the lower price obtained at S., plus the additional freight from F. to S.

**4.—Agency.**

That one directed to the office of the general superintendent of a railway found there a person in charge whom he took to be such officer and who assumed to act for the company in the matter, was sufficient proof of the agency of the person so representing the company to admit evidence of what took place between them, though he was not shown to be the superintendent himself.

Appeal from the County Court of Milam County. Tried below before Hon. John Watson.

*J. W. Terry* and *A. H. Culwell,* for appellant.

*Moore & Moore,* for appellee.

RICE, Associate Justice.—This is a suit for the recovery of damages by appellee against appellant for delay in a shipment of 127 head of beef cattle from Cameron, Texas, to East St. Louis, Illinois, with the privilege of unloading the same for market at Ft. Worth, upon their arrival there. It was further alleged by appellee that appellant contracted to deliver said cattle at Ft. Worth in time for the market of December 21, 1904, but it failed so to do, by reason of which plaintiff was compelled to forward same to East St. Louis, and enroute to said place they were negligently delayed, encountered snowstorms and freezing weather, and finally arrived in East St. Louis in a badly damaged condition, where he was compelled to sell them at a reduced price, to plaintiff's damage in the sum of $1,000. Plaintiff alleged facts showing the difference between the market price of said cattle at Ft. Worth on the day the same were to have been delivered and what he actually received for the same at East St. Louis, together with the difference in freight charges between Ft. Worth and St. Louis and Cameron and St. Louis, for all of which he sued.

Appellant answered by general and special exception, general denial, and specially alleged that said shipment was forwarded under a written contract, and that the cattle were handled promptly and without rough handling to Purcell, Indian Territory, where the same were delivered to the next carrier, after which it had nothing further to do with said shipment. It likewise plead the clause in said contract limiting liability of appellant to such loss and injury as occurred on its own line, and, further, that no agent had power to bind appellant except by written contract, and especially had no power to bind it by agreeing that the shipment would arrive in time for any particular market.

Appellee responded, denying the making of said written contract, alleged a want of consideration therefor and mutuality, and that said cattle were shipped under a verbal contract, by which appellant obligated itself to deliver said cattle in Ft. Worth in time for the market of December 31, 1904.

This is the second appeal of this case. Upon the first appeal the case was reversed on an assignment of error urging the relationship within the third degree of the plaintiff to the trial judge (42 Texas Civ. App., 234) ; but other assignments, some of which are embraced within the present appeal, were then overruled.

The principal controversy in the court below, as well as here, is over

the question as to whether or not the cattle were shipped under the verbal contract pleaded by the plaintiff, or under the written contract pleaded by appellant; each of which issues were submitted to the jury in an admirably fair charge by the trial court, and this issue was determined by the jury in favor of the plaintiff.

Appellant by its first assignment of error complains of the following paragraph of the charge of the trial court: "If you believe from the evidence in this case that on or about the time alleged by plaintiff the defendant, through its agent at Cameron, Texas, entered into a verbal contract with the plaintiff, by which defendant undertook and agreed to ship the plaintiff's cattle to St. Louis, and that by the terms of the contract plaintiff had the privilege of stopping the cattle at Ft. Worth, Texas; and if you further believe from the evidence that defendant agreed in such contract to transport said cattle to Ft. Worth in time for the market at that place on the 31st of December, 1904; and if you further believe from the evidence that defendant failed to convey said cattle to Ft. Worth in time for the market at that place of December 31, 1904, and that as a direct and proximate result thereof it became reasonably necessary, in the exercise of ordinary prudence, for plaintiff to ship his cattle on to St. Louis, and to sell the same at that place, and that the cattle were sold at St. Louis for a lower price than he could have procured for the same on the market at Ft. Worth on the 31st of December, 1904, then you will find for plaintiff, unless you find for defendant under further instructions herein."

By its first proposition under this assignment, appellant contends that this charge was erroneous because it affirmatively appears that the cattle moved under a written contract, which was accepted and the benefits thereof utilized by appellee, and that there was no sufficient proof to raise the issue as to whether the cattle moved under a verbal contract. It further contends that this charge was on the weight of evidence, and had no evidence to support it, for the reason that the plaintiff swore that he made a contract for the shipment of these cattle from Cameron to Ft. Worth, with the privilege of the St. Louis market; whereas, the issue, as submitted under this charge, is as to a contract for the shipment of the cattle from Cameron to East St. Louis, with the privilege of the Ft. Worth market. Relative to the first proposition, we think the evidence is amply sufficient to raise the issue that appellant made a verbal contract with the appellee, by which it obligated itself to ship the cattle to Ft. Worth in time for the market of December 31, 1904. Plaintiff testified that about a week prior to the time the cattle were shipped he made a contract with appellant, through its Cameron agent, whereby it was agreed that the cattle should be shipped on the following Friday to East St. Louis, with the privilege of the Ft. Worth market, and that the cattle would be transported to Ft. Worth in time for market on the 31st of December, 1904; that on the 30th of December, his cattle were started from his place to Cameron, and that hastening ahead, he phoned the agent at Cameron, informing him that they were enroute, asking if he had ordered the cars for same, to which the agent replied that he had not, but would try and get them in time. The cattle were driven on to Cameron and placed in the company's pens between four and five o'clock on the afternoon of said day, at which time the cars had not arrived, and

did not reach Cameron until about 8 o'clock that night. The cattle were loaded and started out from Cameron to Ft. Worth about 12 o'clock on the night of the 30th, and were delayed about two hours at Temple, and about the same length of time at Cleburne, and did not reach Ft. Worth until one o'clock of December 31, which was too late for the market of that day. It was likewise shown that while at Cameron and before starting with the cattle, appellant, through its agent, again agreed and promised plaintiff to place said cattle in Ft. Worth in time for the market of the next day; and that at Cleburne the plaintiff had a conversation with the general manager of appellant's company, in which said manager, after having been notified that appellee was anxious to reach Ft. Worth before the market closed, stating that it would close that day at 12 o'clock, told plaintiff all right, he would get them there in time for said market. Plaintiff further testified that he was kept in Cleburne about two hours, then made the run to Ft. Worth, arriving about 1 o'clock p. m., but the market had closed when he got there with his cattle. It was Saturday, and the markets always close at 12 o'clock noon on Saturdays. After he got to Ft. Worth he talked to his commission merchant, and then went on to East St. Louis with his cattle as the market had closed; testifying that since the market had closed he thought it was the best thing he could do to go on with his cattle to East St. Louis, and that he believed any prudent man would have done so under the circumstances.

It was shown that the distance from Cameron to Ft. Worth was about 158 miles. One of the conductors handling this shipment between Cameron and Temple testified that the train was an extra, and that a run of 20 miles per hour for 300 miles was reasonable for such a train. Another conductor in charge of this shipment from Temple to Cleburne testified that a run of 100 miles in five hours was reasonable.

Plaintiff testified that after the cattle were loaded, and he was being hurried to get on the train, he signed the written contract in evidence without knowing its contents and without an opportunity to read it, presuming that what he signed was for the purpose of giving him the right to accompany his cattle, and for transportation on his return home, admitting, however, that he did not request time for examination before he signed it. There was a conflict between the plaintiff's evidence and that of appellant, but we think the evidence was amply sufficient to warrant the charge given.

There is no complaint that there is a variance between the pleading and proof, relative to whether the contract was a shipment to East St. Louis, with the privilege of the Ft. Worth market, or to Ft. Worth, with the privilege of the East St. Louis market; but it is merely urged that the same was upon the weight of evidence, and without evidence to support it. We think the contract pleaded not essentially different from that proven, because, in either event, the plaintiff had the benefit of an option of the Ft. Worth market; and by the second clause of the contract as pleaded, and which is sustained by the proof, it was a contract to deliver the cattle at Ft. Worth in time for a certain market, to wit, that of December 31, 1904. This was a contract that the station agent had the right to make by parol; and notwithstanding the fact that plaintiff also signed a written contract, we believe, under the circumstances in evidence, that the parol contract ought to control. (Mis-

souri, K. & T. Ry. Co. v. Carter, 9 Texas Civ. App., 677; Atchison, etc., Ry. Co. v. Grant, 6 Texas Civ. App., 674; San Antonio & A. P. Ry. Co. v. Williams, 57 S. W., 883; San Antonio & A. P. Ry. Co. v. Wright, 20 Texas Civ. App., 136; Easton v. Dudley, 78 Texas, 236; Gulf, C. & S. F. Ry. Co. v. Short, 51 S. W., 262.)

We overrule the second assignment of error, complaining of the action of the trial court in giving the charge presenting the issue raised by the evidence relative to the shipment of the cattle under the written contract, because the evidence justified the court in presenting this issue, and it was not subject to the complaint made against it by appellant.

By its fourth assignment of error appellant urges that the court erred in giving the fourth paragraph of its charge to the jury, which is as follows: "If you find for the plaintiff the amount of your verdict should be the amount of the difference, if any, between the market value of the plaintiff's cattle at Ft. Worth at the time when they should have arrived at that place, and the price at which the same were sold in St. Louis; and also the difference in freight charges, if any, paid by the plaintiff between Cameron and St. Louis and Ft. Worth and St. Louis, such difference, if any, in either case to be determined by you from the evidence in the case."

By its eleventh assignment appellant complains of the refusal of the court to give its special charge No. 14, which is as follows: "You are instructed to find nothing for plaintiff for the difference between the freight charges from Cameron to East St. Louis and the freight charges from Cameron to Ft. Worth."

We think the charge given is correct and submits the proper measure of damages and therefore it was not error to refuse the one asked. If the jury should believe that appellant made the verbal contract with plaintiff, as he contended, and negligently failed to perform it, then if it became necessary on the part of plaintiff, in the exercise of ordinary prudence, to ship his cattle to St. Louis for the purpose of preventing loss, and the cattle were sold there, for their fair market value, then the measure of damages, in our judgment, is the difference between what the cattle could have been sold for at Ft. Worth on the day they should have arrived there, and what they were in fact sold for at St. Louis, plus the freight charges between Ft. Worth and St. Louis. It would devolve upon plaintiff to use all reasonable efforts to minimize the damages on account of appellant's failure to deliver the cattle in Ft. Worth, as contracted by it, and if it became reasonably necessary for him in so doing to forward them to St. Louis for sale, then plaintiff would clearly be entitled to recover the difference between said market price at Ft. Worth and the price for which they were actually sold; and would also be entitled to the additional expense necessary to forward them to St. Louis. If this were not true, it would be allowing appellant to reap a benefit from its own wrong, which the law will not permit. (St. Louis, I. M. & S. Ry. Co. v. Gunter, 86 S. W., 941; 3d ed. Hutch. on Carriers, vol. 3, sec. 1636, pp. 1617, *et seq.*)

Appellant's tenth assignment of error is overruled, because there is no pleading nor evidence raising the issue suggested by it.

The questions raised by appellant's thirteenth and fifteenth assign-

ments of error were passed on adversely to its contention in the former appeal.

By its fourteenth assignment appellant complains of the action of the court in permitting the witness Looney to testify in regard to a conversation had by him with a person whom he thought was the superintendent of the defendant company at Cleburne, contending that the party with whom he had the conversation was not shown to have been an officer of the company, and was therefore not authorized to bind it. The evidence discloses that when the shipment arrived at Cleburne, the plaintiff asked to see the general manager of the company, and was directed by its trainmen to his office. Upon going in he found a man there whom he took to be the general superintendent, and who told him he was the superintendent. This man was at work in the office and seemed to be exercising authority and giving general orders. Witness then told him that he wanted to talk with his commission merchant at Ft. Worth, and was directed by him to the phone, and that after talking with his merchant over the phone he told the superintendent that he wanted to get his cattle into Ft. Worth in time to be sold on the market of that day, and that he expected them to put him there, telling him that the market would close at 12 o'clock that day. "The superintendent told me that I had plenty of time to get to Ft. Worth for that day's market, and he would see that I got there in time."

We think this evidence was admissible, since it appears that the party referred to as its superintendent was in the office of the company, acting for it at the time the conversation occurred. Even if it were error, it seems to us that it would be harmless, for the reason that appellant had already contracted to deliver the cattle in time for said market, and this statement would not increase its liability in this respect.

After a consideration of the remaining assignments of error, believing that there is no merit in any of them they are overruled, and the judgment of the court below is affirmed.

*Affirmed.*