**DAVIS, Director General of Railroads, v. MORGAN. (No. 1463.)**

(Court of Civil Appeals of Texas. El Paso. April 19, 1923. Rehearing Denied May 3, 1923.)

**1. Carriers ☞213—Duty to furnish cars and transport live stock within reasonable time.**

Under Vernon's Sayles' Ann. Civ. St. 1914, art. 6687, it is the duty of a railroad company to furnish cars and transport live stock within a reasonable time to any point on its line, whether the shipment is to a general market, or to a special market, or for pasturage.

**2. Carriers ☞229(1)—Though live stock not sold before shipment, damages for delay in transporting to market held recoverable.**

Damages, whether general or special, resulting from delay in transporting live stock to a market in time for special sales days, may be recovered from the carrier, even though the stock had not been sold under a definite contract before shipment was made.

**3. Carriers ☞229(3)—Notice that shipment of mules was intended for a certain market at a certain time held sufficient.**

Statement by a shipper to a local agent that he wanted to get his mules to market for special sales days, and that he would not ship unless he could get them there for such sale, and his engagement and loading a car on agent's promise that the car would be ready for shipment for the time specified, *held* sufficient notice to the railroad to warrant the recovery of special damages for failure to transport the mules to the market as specified.

**4. Evidence ☞545—Evidence held to establish shipper's knowledge of market value of mules shipped.**

In an action by a shipper to recover for delay in transporting mules, testimony by the shipper that he had traded in horses and mules for about 20 years, and that he was acquainted with the market value of mules at the time in question, *held* to disclose a sufficient knowledge of values at a certain market at the time mentioned to permit his evidence of value to go to the jury.

Appeal from District Court, Taylor County; W. R. Ely, Judge.

Action by G. E. Morgan against James C. Davis, Director General of Railroads. Judgment for plaintiff, and defendant appeals. Affirmed.

Wagstaff, Harwell & Wagstaff, of Abilene, for appellant.

M. S. Long, of Abilene, for appellee.

WALTHALL, J. This suit was brought by G. E. Morgan, appellee, against John Barton Payne, Director General of Railroads, to recover damages to a shipment of 19 mules from Cisco, Tex., to Fort Worth, Tex., and on suggestion of appellant the name of James

C. Davis, Director General and Agent, was substituted for that of John Barton Payne, and the case proceeded to judgment with the name of James C. Davis substituted as suggested.

Appellant alleged that his 19 head of mules were received by appellant for shipment and loaded on a car at Cisco on the 21st of December, 1919, and were negligently delayed in their transportation, arriving in Fort Worth on the 26th of December following. He alleged that he was shipping said mules for the purpose of putting them on the market in a special sale at Fort Worth to take place on the 22d and 23d of December, and which fact was known to appellant's employés and agent at Cisco before and at the time the mules were received and placed in the car for shipment; that by reason of the failure of the mules to arrive in time for the special sale he was damaged in the sum of $500.

Appellant answered by general demurrer, and special exceptions directed to the special item of damage and allegation as to notice of the shipment to a special market, general denial, that appellee loaded the stock in a car on the 21st of December, and, after being informed by appellant that the car was not available, appellee abandoned the stock and went to Fort Worth and gave no orders for the disposition of the stock until the 23d of December, and appellant pleaded that fact as contributory negligence proximately causing the damages complained of.

The court overruled the exceptions, and submitted the case to the jury on special issues. On the issues submitted the jury found:

(1) Appellant promised appellee to furnish a car for shipping the stock on December 20th.

(2) Appellant authorized appellee to load the stock at Cisco on the 21st of December.

(3) Appellant did not transport and deliver the stock within a reasonable time.

(4) Appellee was not guilty of contributory negligence in handling and shipping the stock.

(5) The amount of money that would reasonably compensate appellee for his damages is $500.

(6) Appellant was notified of facts and circumstances which would put it on notice of any unusual or special damages by reason of any delay in the transportation of the stock.

Judgment was entered in favor of appellee for $500, from which this appeal is prosecuted.

It is insisted that, the animals not being under contract of sale, the questions as to whether or not they could have been sold at such sale, and the price at which they could have been sold, are speculative; that, ap-

pellee not having alleged and shown a contract of sale, or the mere probability that a circumstance would exist for a sale at such special sale day, damages based thereon are conjectural and too remote to enable a jury to make a fair and reasonable finding with respect thereto.

As sustaining the proposition appellant refers us to Anvil Mining Co. v. Humble, 153 U. S. 540, 14 Sup. Ct. 876, 38 L. Ed. 814. A review of that case satisfies us that the case has no bearing upon the proposition presented here. .

The facts here are, substantially, that appellee, on the 18th day of December, 1919, desiring to ship his 19 mules from Cisco to Fort Worth to a special sales day for such stock occurring on the 22d and 23d days of December, 1919, inquired of the appellant's agent at Cisco whether he could get a car for such shipment, advising the agent at the time of such special sales day and that he did not wish to move the stock unless he was sure he could get the car. The agent advised appellee that he could get the car; that the car was in the Cisco yards at that time. On that advice appellee drove the greater portion of his mules to Cisco, some 33 miles; some of his mules being already at Cisco. On arriving at Cisco with his stock on the 21st of December, the agent again told appellee that the car was there and was already spotted and gave appellee the key to the shipping pens. Appellee loaded his stock on the car under the direction of appellant's shipping agent on the afternoon of that day, and reported the fact of such loading to appellant's agent, with instructions for the shipment, advising the shipping agent that he, appellee, was going to Fort Worth on the first passenger train, which he did. There seems to have been some misunderstanding as to the car in which the stock had been loaded. · The stock were removed by appellant's employés from the car in which they had been loaded and put back in the pens, and reloaded on the 23d of December, and did not reach Fort Worth until the 26th of December.

[1] Our statute makes it the duty of the appellant upon notice to furnish cars and to transport the stock within a reasonable time to any point upon its line. Vernon's Sayles' Tex. Civ. Statutes, art. 6687.

It was the duty of appellant to ship the stock within a reasonable time, whether the shipment was to a general market, a special market, or for pasturage.

[2] We think it is not the rule, as contended for by appellant, that damages, whether general or special, resulting from delay in transportation of stock, are speculative or conjectural, and therefore not recoverable unless the stock are already sold under a certain contract definitely established before the shipment is made. We have found no-

case so holding, and appellant has referred us to none.

[3] A statement by the shipper to appellant's local agent at Cisco on the 18th day of December that special sales days would be held at Fort Worth on the 22d and 23d days of December for the kind of stock appellee was then shipping, and that he wanted to get his stock to Fort Worth for those days, and did not want to move the stock from where they were unless he could get them there for the sales days, and at the same time engaging a car from the agent for the shipment for such sales days, and a promise from the agent that a car would be ready for his shipment on the 21st of December, and taking his stock to Cisco and loading them on the car spotted by appellant for the loading of the stock, is sufficient notice to appellant of the shipper's desire to have his stock at Fort Worth on such special sales days.

[4] Appellant challenges the sufficiency of the evidence to show the market value of the stock at Fort Worth at the time market value was sought to be shown.

The stock did not reach Fort Worth in time for the special sales days.

Appellée testified:

"I am engaged mostly in the live stock business. I buy and sell horses and mules. I have been engaged in business pretty well all my life, about 20 years, I guess. * * * I have had a good deal of experience in shipping cattle, horses, and mules from this section of the country to Fort Worth. * * * Some of the mules were cheap. I had some good mules and some cheap mules, but the most of them were good mules. I had several mules in there that I paid $200 for, and I had one mule in there that I paid $280 for. I had one I paid $225 for. There was a market value for this character of stock there on the 22d and 23d days of December, 1919. There was a market value there for them on the 26th day of December, 1919. The difference between the market value of that stock on the 22d and 23d days of December, 1919, and the market value of them on the 26th day of December, 1919, was anywhere from $10 to $20 a head. * * * I was acquainted with the market value for them there when they did arrive. I was acquainted with that market value. If these stock, the entire 19 head, had arrived in Fort Worth by the 22d or 23d days of December, 1919, in good condition, the reasonable market value of them would have been in the neighborhood of $2,700—$2,-800. If they had gotten there in good condition on the 22d day of December, I calculate that they would have brought a good deal more than they did. I testified a while ago that if they had gotten there in good condition on the 22d day of December that they would have brought about $2,900. * * * The market value of them in their condition at the time they arrived was around $2,000."

Appellee was examined as to values quite extensively both on direct and cross examination, and while he stated values at dif-

ferent amounts, and his answers to some of the questions on the issue of values are vague and indefinite, the evidence, we think, on the whole disclosed a sufficient knowledge of values at Fort Worth at the time mentioned to permit his evidence of values going to the jury.

Finding no reversible error, the case is affirmed.