**SUGARLAND INDUSTRIES et al. v. UNIVERSAL MILLS.    (No. 11174.)**

(Court of Civil Appeals of Texas. Fort Worth. May 23, 1925. Rehearing Denied June 20, 1925.)

**1. Pleading ☞111—Plaintiff controverting plea of privilege must bring himself within exception to statute.**

Where a defendant whose domicile is in county other than in which suit is brought presents plea of privilege in accordance with statute, the burden is placed on plaintiff who controverts such plea to bring himself within one or more of exceptions of Rev. St. art. 1830.

**2. Pleading ☞111—Evidence held not to show contract in writing to be performed in county of plaintiff's residence.**

In an action for failure to deliver molasses to plaintiff, where defendants interposed plea of privilege to jurisdiction of court, which plaintiff controverted, evidence *held* to show that there was no contract in writing entered into as to delivery of molasses to plaintiff's tanks, or that payment should be made in county where suit brought, within exceptions of Rev. St. art. 1830.

**3. Pleading ☞111—Evidence held not to show cause of action arose in county where suit was brought.**

Where defendant company did not agree verbally or in writing to deliver molasses to plaintiff's tanks, and in view of Rev. St. art. 6682, as amended by Laws 1913 (Sp. Sess.) c. 16, § 3 (Vernon's Sayles' Ann. Civ. St. 1914, art.

6682), making it duty of consignee to unload cars, it is evident that no cause of action arose in county of place of delivery against defendant for failure to deliver molasses, within exception 24 of article 1830.

**4. Sales ☞79—Where delivery not specified place of delivery is point of shipment.**

Ordinarily, where goods are sold and the place of delivery is not specified, the place of delivery is at the point of shipment.

**5. Carriers ☞117—Duty of railroad company to provide sufficient equipment, facilities, and appliances under statute held to be absolute.**

Under Rev. St. art. 6687, declaring it to be the duty of railroad companies operating line in state to provide sufficient tracks, switches, sidings, yards, depots, and other facilities for receiving and delivering freight and motive power, cars and other needful facilities and appliances, the duty to provide such facilities is absolute.

Appeal from Tarrant County Court; H. O. Gossett, Judge.

Action by the Universal Mills against the Sugarland Industries and others. From an order of the court overruling pleas of privilege, defendants appeal. Reversed, and cause transferred to county court of Ft. Bend county.

R. K. Batten, of Fort Worth, and Judson C. Francis, of Sugarland, for appellants.

Smith & Smith, of Fort Worth, for appellee.

CONNER, C. J. This suit was instituted by the Universal Mills, a corporation, against the Sugarland Industries, alleged to be a joint-stock association, and the Sugarland Railway Company and the Gulf, Colorado & Santa Fé Railway Company, alleged to be corporations, and G. D. Ulrich and others, alleged to be members of the Sugarland Industries. It was alleged that the plaintiff's principal place of business was in Tarrant county, Tex., that the Sugarland Industries, the Sugarland Railway Company, and D. G. Ulrich were domiciled in Ft. Bend county, Tex., and that the Gulf, Colorado & Santa Fé Railway Company owned and operated a line of railway in and through Tarrant county. It was further alleged, in substance, that on or about May 5, 1923, the plaintiff and defendant Sugarland Industries entered into a contract for the purchase and sale of a tank carload of Blackstrap molasses, in pursuance of which said defendant on or about May 11, 1923, "loaded into a tank car furnished by the defendant Sugarland Railway Company, the number and initials of which are SL–153, 110,700 pounds of Blackstrap molasses; that said defendant railway company accepted said molasses and issued its bill of lading therefor by the terms of which it agreed to deliver to the order of said Sugarland Industries, in the name

---

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

Imperial Sugar Company, at Fort Worth, Tex., the contents of said car, at which time said Sugarland Industries paid said defendant railway company in advance its freight charges demanded for such shipment."

It was further alleged that defendant, Sugarland Industries, indorsed said bill of lading and attached thereto its draft on plaintiff for said molasses at the price contracted for, and forwarded said draft to plaintiff at Fort Worth, Tex., through banking channels, at which last-named place said draft was presented to plaintiff and there paid by it, whereupon said bill of lading was delivered to plaintiff.

It was further alleged:

"That the defendant Gulf, Colorado & Santa Fé Railway Company actually hauled said carload of molasses from the point of connection of its lines of railway with that of the defendant Sugarland Railway Company to Fort Worth, Tex., by reason of which said defendant Gulf, Colorado, & Santa Fé Railway Company acquiesced in, became a party to, and was bound by the terms of the aforesaid bill of lading."

It was further alleged that by reason of the foregoing allegations the defendants and each of them "became bound and obligated to deliver to plaintiff, at Fort Worth, Tex., 110,700 pounds of Blackstrap molasses, but that there was delivered to plaintiff only 78,080 pounds of said molasses, being a loss of 32,620 pounds thereof; that said 78,080 pounds of molasses was delivered to plaintiff on or about May 21, 1923, at Fort Worth, Tex. That the reasonable market value at said time and place of the 32,620 pounds of Blackstrap molasses which said defendants failed to deliver to plaintiff was the sum of $233.49, in which sum, with interest thereon at the rate of 6 per cent. per annum from May 21, 1923, plaintiff has been damaged."

In the second count of the petition, it was specifically alleged in the alternative that, in the event it was found that the defendants were not liable by reason of the foregoing allegations:

"That at the time said car was delivered to plaintiff at Fort Worth, Tex., to wit, on or about May 21, 1923, that it undertook to unload the same in the usual and customary manner for unloading tank cars; that it had its employés remove the cover from the manhole at the top of the car, and that said employés ascertained that the lever controlling the discharge valve was in its proper place; that plaintiff's employees removed the cap from the discharge valve so as to connect the same with plaintiff's storage tank; that as soon as said cover was removed molasses poured out, indicating that the valve was not tightly closed; that a loose piece of ¾-inch pipe about 3½ feet long was observed by plaintiff's employees sticking down through the discharge valve; that the removal of said piece of pipe was necessary before the flow of molasses could be stopped or turned into plaintiff's storage tank; that before said pipe could be removed 32,620 pounds of said Blackstrap molasses was spilled out on the ground and wholly lost to plaintiff; that said piece of pipe preventing the functioning of the valve was a latent defect which could not have been discovered without removing the cap over the discharge valve; that the defendants Sugarland Railway Company, the Sugarland Industries, G. D. Ulrich, and Gulf, Colorado & Santa Fé Railway Company could each have ascertained by the exercise of ordinary care and diligence that said car was in a defective condition for loading bulk Blackstrap molasses, and each could have, by the exercise of ordinary care and diligence, prevented the loss of said molasses; that the said joint and several negligence of the defendants was the proximate cause of plaintiff's loss of said 32,620 pounds of Blackstrap molasses, by reason of which plaintiff has been damaged in the sum of $233.49 with interest thereon at the rate of 6 per cent. per annum from May 21, 1923."

The prayer of the petition was for the recovery of said $233.49, with interest thereon at the rate of 6 per cent. per annum from May 21, 1923, and for costs of suit.

The defendants Sugarland Industries, Sugarland Railway Company, and G. D. Ulrich each presented pleas of privilege to be sued in Ft. Bend county. No complaint is made of the sufficiency of the several pleas of privilege as to form or substance. The plaintiff, Universal Mills, however, filed a controverting affidavit, to which no objection is urged, wherein the cause of action and the facts alleged in its petition were reiterated. The issues thus formed were heard and determined adversely to defendants on the 9th day of May, 1924. From the order of the court overruling said several pleas of privilege, the Sugarland Industries, the Sugarland Railway Company, and G. D. Ulrich have duly prosecuted this appeal, and we have before us the evidence and the court's conclusions of fact upon which the court's order is predicated.

It is undisputed in the evidence that the Sugarland Industries is an association doing business and having its principal office in the county of Ft. Bend. So, too, is it undisputed that the Sugarland Railway Company is a corporation likewise having its principal office and place of business in Ft. Bend county, and that the defendant G. D. Ulrich is also a bona fide resident of Ft. Bend county.

Article 1830, Rev. Stats., provides that:

"No person who is an inhabitant of this state shall be sued out of the county in which he has his domicile, except in the following cases. * * *"

Appellee, however, seeks to support the order of the court in overruling the several pleas of privilege referred to under exceptions 4, 5, and 24 to article 1830. Exception 4, so far as pertinent, is to the effect that, where there are two or more defendants residing in different counties, in such case the suit may be brought in any coun-

ty where any one of the defendants resides. Exception 5 provides that, where a person has contracted in writing to perform an obligation in any particular county, in such case suit may be brought either in such county, or where the defendant has his domicile. Exception 24 provides that:

"Suits against any private corporation, association or joint-stock company may be commenced in any county in which the cause of action, or a part thereof, arose, or in which such corporation, association or company has an agency or representative, or in which its principal office is situated."

[1] It has been many times decided that a defendant whose domicile is in a county other than that in which a suit is instituted, and who presents a plea of privilege that is in compliance with the statutes, as is the case of all defendants presenting pleas of privilege here, puts the burden upon the plaintiff who controverts the pleas to bring himself strictly within one or more of the exceptions to article 1830. See Graves v. McCollum & Lewis (Tex. Civ. App.) 193 S. W. 217, and cases therein cited.

The evidence, except as we shall hereinafter otherwise state, is in accord with the allegations of the plaintiff's petition. M. O. Andrews, called as a witness in behalf of plaintiff, testified that he was the secretary and treasurer of the Universal Mills and familiar with the purchase of the car of Blackstrap molasses from the defendant Sugarland Industries; that the bill of lading upon which the shipment in question moved was claimed by the Santa Fé local freight office to have gone to the auditor's office and into the permanent files of the Santa Fé; that he thought the car of molasses was bought over long-distance telephone; that his company mailed a confirmation to the Sugarland Industries for that car, and received a letter together with other inclosures. The letter and inclosures were introduced. The first was dated May 12, 1923, addressed to the Universal Mills, Fort Worth, Tex., and reads as follows:

"In accordance with your letter of the 10th inst., we shipped you yesterday a tank car of Blackstrap, routed Santa Fé, and inclose herewith invoice in duplicate.

"We are drawing with B/L attached for invoice amount, and thank you in advance for your protection.

"Kindly return the empty tank to us promptly upon unloading.

"Yours truly,
"G. D. Ulrich, V. P. & G. M."

The invoice, so far as necessary to notice, reads as follows:

"Sugarland, May 11, 1923.
"Sold to Universal Mills, Town, Fort Worth, Texas. Via Santa Fé. Car S L Ry No. 153.
"Interest at 8 per cent. will be charged after the expiration of 30 days from date of invoice.

"9,362 gallons blackstrap molasses, @ 8⅜¢, $792.44 delivered.

| Gross | ...... | 150,500 |
| Tare | ....... | 39,800 |
| Net | ........ | 110,700. |

"This invoice is payable at Sugarland, Tex., in New York, St. Louis, Kansas City, Dallas, Houston, or Galveston Exchange. * * *

"No deductions for damages allowed. Make claims for these if any against delivering line."

The next instrument introduced was a demand draft covering said car No. 153 drawn upon the plaintiff company by the Sugarland Industries with bill of lading attached. The draft was paid by the plaintiff company at the Fort Worth National Bank.

The next instrument offered in evidence was the receipt executed by the Universal Mills and delivered to the agent of the Santa Fé Railway Company. The receipt was dated May 15, 1923, and reads as follows:

"Herewith bill of lading covering car S L–153 containing molasses, now in your yards. Please set this car to our plant on the Rock Island."

It was indorsed: "Receipt of bill of lading is hereby acknowledged. J. H. Hess, Agent."

The plaintiff further introduced an expense bill rendered by the Santa Fé Railway Company and paid by the plaintiff company in the sum of 50 cents, which was paid by the plaintiff because the car contained 200 pounds more molasses than the plaintiff had ordered. The plaintiff also offered the state certificate of weights and measures. On cross-examination the witness Andrews further testified:

"I did not have the conversation I speak of with the Sugarland Industries. Mr. Stone talked to them, and I do not know what the substance of the oral conversation was. I saw the car in which the molasses was supposed to have been shipped on the track at the Universal Mills, but I did not see it unloaded. I saw it after it was unloaded by Mr. Kinney, superintendent for the Universal Mills. He is the same Mr. Kinney that signed that weight certificate. I paid the draft in question as secretary and treasurer of the Universal Mills. * * * I do not think my company has requested the Sugarland Railway Company to furnish the bill of lading in question since this suit has been filed, and I do not think my company has requested the Sugarland Industries or G. D. Ulrich to furnish the bill of lading at this trial, and I do not know whether or not our attorneys have made such request of the defendant mentioned."

Fred Kinney was called as a witness in behalf of plaintiff, and testified in substance that he was the superintendent of the Universal Mills, and was employed in that capacity during the month of May, 1923; that he recalled the arrival of the car S. L. 153 about May 21st, and that the car was weighed and placed up to the pit, and—

"We got on top of the car to close the valve. We could not tell if it was closed or open. It

is eccentric, and it had the appearance of being closed, so we started to connect up the bottom as we do usually, and the valve was partly closed, there being a piece of pipe up in the valve. We took the cap off and that is about all there is to it. We lost about one-third of the car of molasses. I had given it up myself. I had another fellow working there, and he crawled upon the car, and the jostling of the car worked the pipe down, and after the pipe came down the valve closed itself. After the car was received I weighed it. It weighed the first time it was weighed 117,740 pounds, gross weight. We paid a rate with the car empty, but took the gross weight to start with. I mean by the 'pit' where we unloaded it with a 4-inch pipe. The pit is about 100 yards from the track. The outlet on this tank car was on the bottom. At first I went on top of the car which has a dome, and I uncovered the dome and got the cap off at that place. There is no way of ascertaining from the outside of the car whether or not the valve is closed. The valve indicated from the top that it was closed. When I came down I attempted to make the connection with our pipe. I did not remove the cap. I had it removed, and immediately when that cap was taken off the molasses poured through the valve. If the valve had been closed, it would have been impossible for the molasses to run out. When the molasses poured out I got on the car and tried to close the valve on the top. It closed with a spring. You can move the handle around. It was impossible to get the pipe connected with the car while the molasses was pouring out. I did not try to connect it. It might have been possible but not practicable. A fellow working with me got on top of the car, and in getting up he must have shaken the piece of pipe loose and through the opening or the manhole, and we tried to get it down, and the pipe was so long we could not get it out. It was not practical to put the cap back on and unload the car in any other manner. After we finally got the molasses stopped we started the car back to the scales to be weighed. It then weighed 78,080 pounds, or a loss of 32,824 pounds. After the car was unloaded we again weighed it to get the tare weight, which was 39,660. I weighed the car three times. * * * I do not know anything about the contract the Universal Mills had with the Sugarland Industries with reference to this car of molasses. * * * If there had been nothing wrong with the valve I would have connected the pipe with the storage tank by use of a flange union. It would take anywhere from 10 to 20 minutes to make the connection. After we make the connection we would go back on the car and open the valve by turning it to the right. * * * If we had had a properly equipped tank car we probably could have saved the car of molasses."

There was no other evidence offered on the trial, except that it was shown that the Gulf, Colorado & Santa Fé Railway Company had agents and operated a line of railway in Tarrant county.

[2] We are of the opinion that there is no phase of the case as presented by the evidence that will support the court's order below overruling the defendants' pleas of privilege under any one of the exceptions to the general statute that we have noted. The evidence is undoubtedly to the effect that the plaintiff's order for the molasses and the acceptance of said order was over the long distance telephone. The plaintiff did not even offer as a witness the person who made the order. That contract certainly was not in writing, and certainly nothing in the evidence shows that in the contract of sale there was any specific agreement on the part of G. D. Ulrich or the Sugarland Industries to deliver all gallons of molasses sold into the receiving tank of the plaintiff company, or that it was then agreed that the payment by the plaintiff company should in fact take place in Tarrant county. The invoice states payment is to be made at Sugarland, Ft. Bend county; the letter of confirmation, written by the Sugarland Industries, appears on its face to have been written after the contract of sale and after the actual delivery of the molasses to the Sugarland Railway Company, so that neither that nor the draft attached to the bill of lading can be construed to be a contract in writing, which would bring the plaintiff's case within exception 5. See, Grain & Seed Co. v. Blumberg (Tex. Civ. App.) 162 S. W. 1; Graves v. McCollum & Lewis (Tex. Civ. App.) 193 S. W. 217; Gensberg v. Neely (Tex. Civ. App.) 187 S. W. 247; Griffith v. Gohlman, Lester & Co. (Tex. Civ. App.) 200 S. W. 233; Harris v. Moller (Tex. Civ. App.) 207 S. W. 961.

[3, 4] The case is not brought within exception 24 since, as we view the evidence, no part of plaintiff's cause of action arose in Tarrant county. As already noted, the evidence fails to show any agreement either written or verbal on the part of Ulrich or the Sugarland Industries to deliver the molasses to the plaintiff company in Fort Worth. Ordinarily, where goods are sold and the place of delivery is not specified, the place of delivery is at the point of shipment. Specialty Furniture Co. v. Kingsbury (Tex. Civ. App.) 60 S. W. 1030; 35 Cyc. page 134; 23 R. C. L. p. 1423, par. 248, and numerous cases cited in note 4.

Article 6682 of our Revised Statutes, as amended by Acts 1913 (Sp. Sess.) c. 16, § 3 (Vernon's Sayles' Ann. Civ. St. 1914, art. 6682), provides:

"When cars have been supplied and loaded, it shall be the duty of the railway company to deliver the same to the party or parties to whom they are consigned within a reasonable time; and the party or parties to whom the cars are consigned shall unload the same within forty-eight hours after delivery and notice, or forfeit and pay to the company the sum of twenty-five dollars per day for each car not so unloaded."

See, also, Greif & Bro. v. Seligman (Tex. Civ. App.) 82 S. W. 533. And this is true even if shipped c. o. d. Keller v. State (Tex. Cr. App.) 87 S. W. 669, 1 L. R. A. (N. S.) 489; Texas Steamship Co. v. Dupree Com. Co. (Tex. Civ. App.) 131 S. W. 621.

In the case of Loveland v. Burke, 120 Mass. 139, 21 Am. Rep. 507, where a consignee undertook to unload a barrel of molasses on skids furnished by himself, it was held that the carrier was not liable for loss occasioned by a defect in the skids. And in 1 Moore on Carriers, page 393, it is said, in effect, that where by the bill of lading or otherwise it becomes the duty of the consignee to unload the goods, the carrier discharges its duty by placing them in a convenient place to unload.

It certainly cannot be held, therefore, that the Sugarland Industries or G. D. Ulrich contracted in writing or otherwise to deliver the molasses into the receiving tank of the plaintiff company. The fact is the full quantity of molasses sold by the Sugarland Industries was placed in the tank car of the Sugarland Railway Company, and by it and the Gulf, Colorado & Santa Fé Railway transported and delivered to the plaintiff company in Fort Worth, Tex., and the plaintiff company undertook to unload the molasses. So that it cannot be said that any cause of action against the Sugarland Industries or G. D. Ulrich arose because of any failure on the part of those defendants to deliver the molasses in Tarrant county. Nor do we think it can be said that the facts show that, as against those defendants, a cause of action existed at all in plaintiff's favor. The loss was occasioned, not in a failure to transport and deliver, but in the failure on the part of some one to furnish a suitable car for the shipment, or to see that it did not contain a pipe or other thing that could reasonably be expected to disturb the valve which partly opened and occasioned the plaintiff's loss.

[5] Article 6687, Rev. Stats. declares it to be the duty of railway companies operating a line of railway in this state to provide sufficient tracks, switches, sidings, yards, depots, and other facilities for receiving and delivering freight and motive power, cars, and all other needful facilities and appliances. And this duty has been held to be absolute. See St. L. S. W. R. Co. v. Morehead (Tex. Civ. App.) 207 S. W. 336. We know of no law, and none has been cited, requiring a shipper to exercise more than ordinary care to see that the shipment of goods is in a properly equipped car, and nothing in the evidence here indicates that the obstruction mentioned was observable or even in existence at the time the car of molasses was loaded in Ft. Bend county. It is evident, therefore, that plaintiff's case has not been brought within exception 24, and what we have said in disposing of the contention that the case was not within that exception would seem sufficient to dispose of appellee's contention that the case has been brought within exception 4. It is true that the court had jurisdiction over the Gulf, Colorado & Santa Fé Railway Company, and likewise perhaps over the Sugarland Railway Company, under articles 710, 731, and 732 of our Revised Statutes relating to common and connecting carriers. But evidently under the evidence the other defendants named were not jointly liable with the railway companies; nor indeed, as already shown, was a cause of action of any kind presented by the evidence against the Sugarland Industries and G. D. Ulrich, and this was necessary to bring the case within exception 4. See Hart Shoe Co. v. Adams (Tex. Civ. App.) 248 S. W. 475. Moreover, as shown by a supplemental transcript brought up under a writ of certiorari, the trial court, after the appeal in this case and during the same term of court, permitted the plaintiff to dismiss its suit against both the Sugarland Railway Company and the Gulf, Colorado & Santa Fé Railway Company.

We conclude that the court erred in overruling the pleas of privilege of the Sugarland Industries and G. D. Ulrich, and as to those defendants it is ordered that the judgment be reversed and the cause duly transferred to the county court of Ft. Bend county.