## WICHITA VALLEY RY. CO. et al. v. WALLACE. (No. 565.)

Court of Civil Appeals of Texas. Eastland. April 26, 1929.

Dickson & Dickson, of Seymour, for appellants.

J. A. Wheat, of Seymour, for appellee.

FUNDERBURK, J. S. D. Wallace, as plaintiff below, recovered judgment for the sum of $824.42 against the Wichita Valley Railway Company and the Fort Worth & Denver City Railway Company, from which the defendants have appealed.

The cause of action is based upon a cattle shipment from Bomerton and Seymour, in Baylor county, Tex., to Fort Worth, Tex. The claim for damages is for delay only. The shipment consisted of 94 head of baby beef cattle, and the evidence is regarded as sufficient to show that they weighed an average of 550 pounds each, and, had they reached Fort Worth in time for the early morning market of September 15, 1928, they would have brought 10 cents a pound, or a

total of $5,170. The evidence further establishes that, by reason of the fact that they did not arrive in time for the morning market, the best price for which they could have been sold that day or the next was $9.10 per 100 or a total of $4,704.70. Wallace being unwilling to sell at such price, and believing that Kansas City offered a better market, on September 16, 1928, reshipped the cattle to Kansas City Mo., where they were sold for $4,448.51, which was the best price obtainable. The total cost of the reshipment, including feed, bedding cars, yardage, and extra freight, was $202.93. The judgment rendered included this sum of $202.93, together with the difference between the market value of the cattle on the Fort Worth market at the time it is claimed they should have been delivered, and the price that they were sold for on the Kansas City market, there being apparently an error in calculation of $100 against the plaintiff.

■■ As a basis of liability the court submitted to the jury, in two special issues, questions as to whether each of the railroads exercised ordinary care and diligence in transporting the cattle. Appellants complain that this was not the proper test of their liability. In criticizing the test of their liability as thus submitted to the jury, appellants contend that the proper test is not whether the run made by the carrier is reasonable, but whether the carrier used reasonable care to transport in a reasonable time. The special issues were not free from just criticism, but they will be tested only with reference to the objections made. As bearing on the question it is important to determine whether plaintiff's petition sought recovery for the alleged breach of the carrier's common-law duty, or whether the alleged breach of duty for which damages were claimed was one provided by the contract of shipment, or by the statute law of this state. As to this, plaintiff's petition is not entirely clear. There is, therefore, presented a question, the answer to which must be arrived at by construing the pleading.

The pleading refers to the "contracts of shipment," and alleges that same had been misplaced or lost, and notice was given to the defendants to produce copies thereof upon the trial. It is further alleged "that the defendants accepted the said shipment and agreed and were bound under the law to transport the said two cars of cattle promptly and with dispatch to the market at Fort Worth, Texas." While allegations as to the breach of the alleged duty may be said to be more appropriate to a claim of the breach of duty imposed by the common law, yet we think, in view of the foregoing, the allegations are sufficient to charge a breach of an alleged duty, which was one imposed by the contracts of shipment and the statutory law of the state. The contract of shipment provides, among other things: "No carrier is bound to transport said live stock by any

particular train or vessel, or in time for any particular market, or otherwise than with reasonable dispatch." (Italics ours.)

This provision, thus negatively expressed, sufficiently evidences the contract obligation of the carriers to transport the cattle "with reasonable dispatch." The carrier's obligation thus expressed is no different than that the law would have read into the contract anyway. R. S. 1925, art. 905, provides: "All common carriers * * * [as to a through shipment] shall be deemed and held to be under a contract with each other and with the shipper, owner and consignee of such property for the safe and speedy transportation [italics ours] of such property from point of shipment to destination." This statute has been held to apply to shipments of live stock. Texas & N. O. Ry. Co. v. Drahn (Tex. Civ. App.) 157 S. W. 282.

The obligation of the carriers is otherwise prescribed in R. S. 1925, art. 6490, in language as follows: "Every railroad company operating a line of railroad within this state * * * as to all services to be performed within the limits of the state, as to such freight and cars shall transport same within a reasonable time to destination, [italics ours] when destined to a point upon the line of such railway receiving such freight, * * * and each connecting line of railroad engaged in such transportation, as to all such service to be performed, as to all such freight and cars in which the same is carried within this state, shall receive and transport within a reasonable time [italics ours] such loaded car or cars," etc. This statute likewise has been held to apply to shipments of livestock. Davis v. Morgan (Tex. Civ. App.) 251 S. W. 310.

Giving to the plaintiff's pleading the construction which we do as seeking recovery on the contract and statutory obligation of the carriers, we readily reach the conclusion that appellants' contention that its obligation was only to use reasonable care to transport within a reasonable time, cannot be sustained. The duty to transport within a reasonable time is absolute. St. Louis S. W. Ry. Co. v. Morehead (Tex. Civ. App.) 207 S. W. 336; Sugarland Industries v. Universal Mills (Tex. Civ. App.) 275 S. W. 406. This conclusion results from the simple application of the familiar principle that, where a statute or contract imposes an obligation, liability for its breach is not dependent upon a failure to exercise reasonable care. The authorities cited and relied on by appellants state the rule applicable when only the common-law duty of the carrier is in question.

■ Our conclusion thus disposing of appellant's first assignment simplifies the question presented by the further contention that the verdict of the jury is contrary to the evidence, because there was no evidence showing negligence in the transportation of the cattle. The issues as submitted were undoubt-

edly too broad. They should have been so framed as to call for a specific finding as to whether the transportation of the cattle was made within a reasonable time, or (what is the same thing) whether they were transported with reasonable dispatch. But we cannot say that the more specific issue is not included in the more general which was submitted. The findings of the jury in answer to the special issues submitted are not, we think, subject to the objection that they are not supported by the evidence. The evidence justified the jury in concluding that the usual time required to transport the cattle was from 10 to 14 hours, and the time actually consumed was from 18 to 20 hours. That much delay, particularly when unexplained, undoubtedly presents a jury question as to the reasonableness of time. Kansas City, M. & O. Ry. Co. v. Cauble (Tex. Civ. App.) 286 S. W. 478.

One special issue submitted to the jury, and upon their answers to which the judgment is based, was: "Did plaintiff use ordinary care in reshipping his cattle from Fort Worth to Kansas City, Mo.?" The submission of this issue was objected to by appellant, on the ground that there was no basis in the pleadings for same. The assignment presenting this point, we think, should be sustained. Appellee's petition alleged that, on the next day after the delayed shipment arrived, he was offered $9.10 per 100 for the cattle; that, appreciating the fact that the cattle were hold-overs, and he could not secure an offer for them for what, in his opinion, they were worth, he, being an experienced cow man and knowing cow values, was convinced the cattle were worth more than he was able to secure on the Fort Worth market at the time, and reshipped them to Kansas City, at which point there was a market, and where they were sold for $4,448.51, with added expenses of $202.93. If appellee had the right to reship the cattle to another market, and thereupon fix some other basis for measuring the damages than their market value in Fort Worth, it is upon the principle that charges him with a duty to minimize the damages, as discussed in Fort Worth & Denver City Railway Co. v. Daggett, 87 Tex. 322, 28 S. W. 525. It was not sufficient for him to have a bona fide opinion that the cattle would bring a better price on the other market. He must, under the circumstances, have been justified in the belief that the cattle would not only bring more on the other market, but that they would there sell for a sufficiently higher price to justify the extra expense incident to the reshipment. With the pleading showing the existence of a market at Fort Worth, we think it is insufficient to support a recovery upon the issue in question, in the absence of any allegation to show that appellee was, in the exercise of reasonable care, justified in believing that the cattle would, at least, sell at Kansas City for a price which, after deducting the extra expenses, would exceed the amount certainly obtainable on the Fort Worth market.

In view of a retrial of the case, we suggest that, in our opinion, the issue in question is not sufficiently specific. It seems to us that two questions are involved which may properly be separately submitted. One is whether or not plaintiff in good faith believed he could get a sufficiently better price at Kansas City to more than make up the reasonable extra expenses of the reshipment, and the other is whether or not, under all the circumstances, as they existed at the time, he was reasonably justified in such belief.

We have given consideration to the question whether or not, in case of a delayed shipment of live stock, the shipper could, in any event, where there was a market at the point of destination, reship to another market and recover damages on the basis of a sale there at a lower price than that obtainable at the original destination. The authorities relied on by appellee in support of such right are: Texas & P. Ry. Co. v. Smissen, 31 Tex. Civ. App. 549, 73 S. W. 42; Texas & P. Ry. Co. v. Nelson, 38 Tex. Civ. App. 605, 86 S. W. 616; Texas & P. Ry. Co. v. Coggin, 40 Tex. Civ. App. 583, 90 S. W. 523; St. Louis I. M. & S. Ry. Co. v. Gunter, 44 Tex. Civ. App. 480, 99 S. W. 152; St. Louis, I. M. & S. Ry. Co. v. Gunter, 39 Tex. Civ. App. 129, 86 S. W. 938; Missouri, K. & T. Ry. Co. v. Quinn (Tex. Civ. App.) 29 S. W. 404. To which we may add, in order to complete the list of all authorities we have found bearing on the question: Gulf, C. & S. F. Ry. Co. v. Looney, 51 Tex. Civ. App. 381, 115 S. W. 268.

We have endeavored to distinguish these authorities on the ground that such right exists only in cases where there is no market at the original destination. An examination of the facts in the several cases shows that in most, if not all, of them, they do differ from the present case, in that there was no market at the time reshipment was made. We have concluded, however, that for us to undertake to declare a limitation upon the principle announced in said cases, based upon such distinction, would bring us in conflict with well-recognized principles governing the measure of damages discussed in cases like Gulf, C. & S. F. Ry. Co. v. Keith, 74 Tex. 287, 11 S. W. 1117, St. Louis S. W. Ry. Co. v. Chambliss (Tex. Civ. App.) 54 S. W. 401, Missouri, K. & T. Ry. Co. v. Allen, 39 Tex. Civ. App. 236, 87 S. W. 168, and Galveston H. & S. A. Ry. Co. v. Tuckett (Tex. Civ. App.) 25 S. W. 670.

The principle referred to is stated in Williston on Contracts as follows: "If, in the exercise of reasonable judgment, plaintiff clearly ought to have replaced or repaired or ought not to do so, and by failing to take the prudent course suffers unnecessary injury, he cannot recover the damages which might thus

have been avoided. *On the other hand, if he reasonably chooses one of these courses and it turns out that the damages are thereby increased rather than diminished, the defendant is liable for the increased damage.*" (Italics ours.)

It is not too much to say, we think, that, if the carrier is to be charged with the mistakes of judgment of the shipper in making a reshipment under such circumstances, the pleadings ought, in the first place, to allege facts such as would justify such judgment, and the evidence should fully support the allegations.

For the errors herein mentioned, the judgment of the trial court will be reversed, and the cause remanded.